OPINION
{¶ 1} Appellant, JoAnn Ward, the mother of Joevan Reese, appeals from an order of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating her parental rights and placing Joevan in the permanent custody of appellee, Franklin County Children Services ("FCCS").
 {¶ 2} Joevan was born on April 29, 1996. FCCS originally filed a complaint on February 18, 1997 pursuant to R.C.2151.04(C) alleging that Joevan was a dependent child because appellant had been arrested for using drugs and allegedly attempted to sell Joevan. (Nov. 25, 2002 Tr. at 6.) Appellant also had two other daughters who were living in foster homes. The trial court adjudicated Joevan a dependent child, awarded FCCS temporary custody and approved a case plan which required, among other things, that appellant improve her parenting skills, address her drug use and maintain sobriety, maintain appropriate housing and receive individual counseling. (Nov. 4, 2002 Tr. at 4.) Appellant worked hard to complete the case plan (Nov. 25, 2002 Tr. at 15) and she completed parenting classes and a drug and alcohol program. She was attending Alcoholics Anonymous meetings. (Feb. 19, 2002 Tr. at 18.) In May 1998, Joevan was returned on leave status and appellant regained custody on July 9, 1998. (Feb. 19, 2002 Tr. at 19.)
 {¶ 3} In May 1999, Joevan was again removed because appellant was again using crack cocaine. (Feb. 19, 2002 Tr. at 20.) Appellant again completed parenting classes and drug/alcohol counseling and, on June 27, 2000, Joevan returned. However, on September 15, 2000, Joevan was again removed because appellant tested positive for cocaine, was dating Randall Delancy, who had been convicted of gross sexual imposition and she had failed to register Joevan for school. (Nov. 4, 2002 Tr. at 10; Nov. 25, 2002 Tr. at 23-25.) Joevan has been in foster care continuously since September 2000.
 {¶ 4} On July 13, 2001, FCCS filed a motion for permanent custody pursuant to R.C. 2151.413 on the basis that Joevan had been in the temporary custody of FCCS for 12 or more months of a consecutive 22 month period. A hearing was held before a magistrate on February 19, November 4, November 25 and November 26, 2002. The magistrate found that continuation in the child's own home would be contrary to the child's welfare and that although reasonable efforts have been made to prevent or eliminate the need for removal of the child, the circumstances giving rise to the original filing have not been sufficiently alleviated. The magistrate sustained the motion of FCCS for permanent custody terminating the temporary court custody of Joevan. The magistrate determined that it was in the best interest of Joevan to terminate the parental rights of appellant and Charles Reese, the deceased father of the minor child, pursuant to R.C. 2151.414(F). Appellant's attorney filed an objection to the magistrate's decision but the trial court overruled the objection and sustained the magistrate's decision.
 {¶ 5} Appellant filed a timely notice of appeal and raises the following assignments of error:
I. The trial court erred in determining that the Franklin County Children Services motion for permanent custody was supported by clear and convincing evidence.
II. The trial court abused its discretion in determining that Franklin County Children Services should gain permanent custody of Joevan Reese.
 {¶ 6} By the first assignment of error, appellant contends that the trial court erred in determining that the FCCS' motion for permanent custody was supported by clear and convincing evidence. In reviewing a trial court's decision to grant permanent custody, an appellate court must be mindful that:
* * * The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. Moreover, the knowledge the juvenile court gains at the adjudicatory hearing through viewing the witnesses and observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proferred testimony cannot be conveyed to a reviewing court by a printed record.
In re Sears (Jan. 31, 2002), Franklin App. No. 01AP-715.
 {¶ 7} Clear and convincing evidence requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 8} R.C. 2151.414(B)(1) provides, in pertinent part, as follows:
Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
* * *
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.
 {¶ 9} In determining the best interest of a child, a trial court shall consider all relevant factors, including those provided in R.C. 2151.414(D), as follows:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and child.
For the purposes of this division, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28
of the Revised Code or the date that is sixty days after the removal of the child from home.
 {¶ 10} At the hearing, Kim Starr, the FCCS caseworker on appellant's case from June 1996 until April 2001 testified that when appellant was not using drugs, she was able to take care of her home, Joevan and keep her appointments. (Nov. 4, 2002 Tr. at 74.) When she began to use drugs, however, the house and Joevan would be dirty and appellant would miss appointments. In May 1999, Ms. Starr removed Joevan from the home because all the new furniture that FCCS had purchased for appellant was gone, the apartment was full of roaches, there was a big hole in the wall, there were maggots in the food in the refrigerator, Joevan was only in a diaper even though there were new clothes in her closet and Joevan began missing school. (Nov. 4, 2002 Tr. at 76.) When Ms. Starr arrived at appellant's apartment that morning before removing Joevan, a neighbor asked Ms. Starr if she was there to use some crack cocaine. (Nov. 4, 2002 Tr. at 76.) At that time, appellant admitted to Ms. Starr that she had used drugs again. (Nov. 4, 2002 Tr. at 77.) For a month or so, appellant disappeared and the agency did not know her whereabouts. (Nov. 4, 2002 Tr. at 77.) Finally, appellant was warned that she needed to get things back together because the agency was deciding whether to file for permanent custody. (Nov. 4, 2002 Tr. at 78.) Appellant once again received counseling, received help in getting another apartment and furniture and worked towards reunification. (Nov. 4, 2002 Tr. at 78.) Joevan was returned in June 2000 but removed again in September 2000. Appellant tested positive for cocaine, started involvement with Delancy and did not register Joevan for school. (Nov. 26, 2002 Tr. at 23-25.)
 {¶ 11} On cross-examination, Ms. Starr testified that when she observed appellant and Joevan, they had a good relationship, although appellant was like a kid herself and the two had more of a peer relationship than a parent/child relationship. (Nov. 25, 2002 Tr. at 19, 60-61.) Ms. Starr believes that appellant's intellectual capacity falls far below the average. (Nov. 25, 2002 Tr. at 35.) Ms. Starr testified that she believed the permanent custody motion should be granted because even though appellant is capable of completing another case plan, she is unable to adapt to the changing needs and gain the required parenting skills to take care of Joevan. (Nov. 25, 2002 Tr. at 51-52, 54, 58.) Ms. Starr did not believe that appellant would ever be able to "get things together" on a permanent basis. (Nov. 26, 2002 Tr. at 55.) Joevan has been with the same foster parent since May 1999 (except for the three months she returned to appellant in 2000) and Joevan needed permanency and stability. (Nov. 4, 2002 Tr. at 23; Nov. 25, 2002 Tr. at 55.)
 {¶ 12} Julia Brown, appellant's FCCS caseworker since April 2001, also testified. She stated that the case plan includes improving appellant's parenting skills, addressing her history of drug abuse and maintaining sobriety, maintaining appropriate housing and receiving individual counseling. (Nov. 4, 2002 Tr. at 8.) Ms. Brown had given appellant 57 drug screens and had received 21 of them. Several of the screens were positive for opiate use which appellant attributed to prescription drugs she was using but the drugs she was taking would not trigger a positive result for opiates. (Nov. 4, 2002 Tr. at 9-10.) Ms. Brown testified that appellant was warned not to be involved with Delancy due to his conviction for gross sexual imposition, yet in August 2000, appellant married him. (Nov. 4, 2002 Tr. at 13-14; Nov. 26, 2002 Tr. at 4.) Ms. Brown testified that appellant has not corrected the problems which led to Joevan's removal. (Nov. 4, 2002 Tr. at 14.)
 {¶ 13} Ms. Brown also expressed concern over appellant's parenting skills. (Nov. 4, 2002 Tr. at 15.) When she had witnessed appellant and Joevan's interaction during visitations, she believed appellant was unable to set boundaries for Joevan and there was more of a peer relationship between them. (Nov. 4, 2002 Tr. at 15.) Appellant allows Joevan to do whatever she wants, even hitting appellant in the face. (Nov. 4, 2002 Tr. at 18.) Appellant had threatened in Joevan's presence more than once to commit suicide if she did not regain custody of Joevan. (Nov. 4, 2002 Tr. at 15-17.)
 {¶ 14} Ms. Brown does not believe appellant benefited from her parenting classes and does not believe Joevan and appellant are bonded. (Nov. 4, 2002 Tr. at 18; 24.) Ms. Brown stated that Joevan wants to stay with the foster parent and that Joevan has been in foster care for 12 of the last 22 months. (Nov. 4, 2002 Tr. at 24.)
 {¶ 15} Joevan's foster mother since May 1999, Clara Jo Vance also testified. She stated that she is financially able to provide for Joevan and she would be interested in adopting Joevan if the permanent custody motion is granted. (Feb. 19, 2002 Tr. at 63, 65.) She is very close to Joevan and sometimes Joevan calls her "Mommy." (Feb. 19, 2002 Tr. at 63.) Joevan told Ms. Vance that she is afraid of being returned to appellant. (Feb. 19, 2002 Tr. at 65.) Appellant left several nasty voicemail messages on Ms. Vance's voicemail. (Feb. 19, 2002 Tr. at 66.)
 {¶ 16} Joevan's guardian ad litem also testified. She recommended that the trial court grant the motion for permanent custody based upon appellant's failure to complete her case plan, relapses with drug use even after completing two programs and marrying a man who had been convicted of gross sexual imposition after warnings from the caseworkers that associating with him would prevent her gaining custody. (Nov. 26, 2002 Tr. at 63-64.) The guardian ad litem believed that the court had no alternative but to grant the motion for permanent custody because it was in Joevan's best interest since she needs a stable environment. (Nov. 26, 2002 Tr. at 64.)
 {¶ 17} Appellant also testified at the hearing. She stated that, although she did marry Delancy, she was preparing to file for divorce because they had been separated for four days. (Nov. 26, 2002 Tr. at 4-5.) She had not used drugs for approximately one year. (Nov. 26, 2002 Tr. at 11.) Although she had not received drug treatment since June 2000, and was not attending Alcoholics Anonymous meetings, she was getting involved with a counselor the next week and starting a new job the new week. (Nov. 26, 2002 Tr. at 42-44.) She loves Joevan and wants to be involved even if it is only through visitation rather than custody. (Nov. 26, 2002 Tr. at 37, 41, 50.)
 {¶ 18} Appellant argues that FCCS failed to prove by clear and convincing evidence that it is in the best interest of Joevan to grant permanent custody to FCCS. While it is clear that appellant has regularly visited Joevan and made efforts towards reunification, the testimony of the caseworkers and guardian ad litem was that appellant was not capable of correcting or alleviating the conditions which led to Joevan's removal on a permanent basis. Despite completing two sets of drug counseling and two sets of parenting classes, appellant still had not eliminated the conditions. Appellant's marriage to a man convicted of gross sexual imposition after being warned not to associate with him poses a danger to Joevan.
 {¶ 19} Both Ms. Brown and Ms. Vance testified that Joevan wishes to remain with her foster parent and is afraid to return to appellant. Joevan had only lived with appellant for 21 months of her life at the time of the hearing. She has bonded with her foster mother, who has expressed a desire in adopting her if the motion is granted.
 {¶ 20} Appellant also argues that the trial court did not consider whether the permanent custody order was the only way to achieve the best interest of Joevan. The guardian ad litem specifically testified that the permanent custody order was the only alternative for the court to achieve results in Joevan's best interest because she needs a permanent and stable home.
 {¶ 21} Both caseworkers and the guardian ad litem testified that it was in Joevan's best interest to grant the motion for permanent custody. Joevan needs a stable and permanent home, which appellant is unable to provide for her. FCCS did provide clear and convincing evidence that granting the motion for permanent custody was in Joevan's best interest. Appellant's first assignment of error is not well-taken and is overruled.
 {¶ 22} By the second assignment of error, appellant contends that the trial court abused its discretion in determining that FCCS should gain permanent custody of Joevan. Since we have found in the first assignment of error that clear and convincing evidence was provided that it was in Joevan's best interest to grant the motion of FCCS for permanent custody, the trial court did not abuse its discretion in granting the motion. Appellant's second assignment of error is not well-taken and is overruled.
 {¶ 23} For the foregoing reasons, appellant's two assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
Klatt and Sadler, JJ., concur.